UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROBERT GROSZ and CHAYA GROSZ,
on behalf of plaintiffs and the class members
described below,   **MEMORANDUM & ORDER**
   17-cv-3166 (SJF) (AYS)

       Plaintiffs,

  -against-

CAVALRY PORTFOLIO SERVICES, LLC,

       Defendant.
---------------------------------------------------------------X
FEUERSTEIN, District Judge:

  Plaintiffs Robert Grosz ("Robert") and Chaya Grosz ("Chaya") (collectively "Plaintiffs") commenced this putative class action against Cavalry Portfolio Services, LLC ("Cavalry" or "Defendant") alleging that Defendant has used unlawful collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* On September 28, 2018, the Court granted Defendant's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and gave Plaintiffs leave to amend consistent with that Order. *See* Memorandum & Order ("M&O"), Docket Entry ("DE") [28]. On October 26, 2018, Plaintiffs timely filed an Amended Complaint ("AC"), *see* DE [30], asserting the same claims but adding factual allegations. Currently pending before the Court is Defendant's fully-briefed motion to dismiss the amended complaint. Motion, DE [35]. For the reasons set forth herein, the motion is granted.

**I. BACKGROUND**

**A. Factual Allegations**

  The facts are taken from the amended complaint and are assumed to be true for purposes of this motion and do not constitute findings of fact by the Court. The amended complaint

contains the same allegations as the original complaint, with the addition of six (6) paragraphs of factual allegations.

Robert and Chaya are husband and wife and reside in Nassau County. AC ¶9. Cavalry is a collection agency that uses the mails and telephone calls to collect delinquent debts owed to others. *Id.* ¶11. Cavalry is a "debt collector" within the meaning of the FDCPA. *Id.* ¶12.

On or about October 19, 2016, the following message was left on Plaintiffs' voicemail:

> My name is Shelly Warnack (phonetic) and I'm attempting to locate C. Grosz. If you have any information that would help me locate C, please return my call at 888-229-6009 extension 31668. Thank (cuts off.)

AC ¶13 (the "VM Message"). Plaintiffs allege that the VM Message is a standardized message used by Cavalry. *Id.* ¶15. The call was received on a telephone land line that is billed to Robert, but is "regularly used" by both Robert and Chaya. *Id.* ¶14. Plaintiffs allege, upon information and belief, that the call "pertained" to one of two credit card accounts, with the Gap or Lord & Taylor, held by Chaya. *Id.* ¶15. Both accounts were obtained for personal, family or household purposes and "were used for the benefit of both husband and wife." *Id.* Robert "may also have been authorized to use the accounts or a signatory." *Id.*

On some unspecified date, Robert "returned the call." AC ¶20. The amended complaint alleges that Robert "often returned calls on behalf of Chaya Grosz, as her agent." *Id.* ¶21. When Robert returned the call, he heard a recorded message that began "[t]his call may be monitored and recorded. Thank you for calling Cavalry Portfolio Services . . ." and gave instructions on how to connect with a representative. *Id.* ¶22 (the "Cavalry Recording"). Plaintiffs claim upon information and belief that the Cavalry Recording is also a standardized message regularly used by Cavalry. *Id.* ¶23. There is no indication that Chaya heard either the VM Message or the Cavalry Recording.

2

**B. Procedural History.**

The original complaint asserted a single cause of action for violations of §§1692d(6), 1692e, and 1692e(11) of the FDCPA. The M&O, *inter alia:* (1) dismissed the §1692d claim with prejudice; (2) dismissed the §1692e claims regarding the VM Message, finding a lack of factual allegations regarding (a) Robert's standing to assert a claim under the section, and (b) the basis for Chaya's claim; and (3) found that the Cavalry Recording does not constitute a "communication" and thus does not violate §1692e. Noting that the Plaintiffs' §1692e claim regarding the VM Message "may benefit from a more detailed set of factual allegations," Plaintiffs were given leave to amend their complaint to that limited extent. M&O at 10.

On October 26, 2018, Plaintiffs timely filed an amended complaint that again contains a single cause of action for violations of §§1692d(6), 1692e, and 1692e(11) of the FDCPA,[1] and further seeks certification of a class action. Defendant now moves to dismiss the amended complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief, arguing that the added factual allegations have not cured the pleading issues identified by the M&O.

## II. LEGAL STANDARDS

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A plaintiff is not required to plead "specific evidence or extra facts beyond what is

---

[1] The paragraphs pertaining to the §1692d claim are bracketed, *see* AC ¶¶25, 30, 30(a), suggesting that Plaintiffs intended to remove those paragraphs rather than refile a claim expressly dismissed with prejudice by the Court. As neither party has substantively addressed this claim, the Court assumes it was refiled in error.

needed to make the claim plausible." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120-21 (2d Cir. 2010). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Factual allegations must be enough to raise a right to relief above the speculative level, "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss for failure to state a claim, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Warren v. Colvin,* 744 F.3d 841, 843 (2d Cir. 2014); *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). Although factual allegations are assumed to be true, this principle is "inapplicable to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation"(internal quotation marks and citation omiteed)).

Plaintiffs contend that the amended complaint states a plausible claim of: (1) violation of §1692e, which generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt"; and (2)

violation of §1692e(11), which requires specific disclosures to consumers in communications with them.[2]

**III. DISCUSSION**

**A. Chaya's Claim**

The M&O, noting that the basis of Chaya's claim was unclear, particularly since she is not alleged to have heard the VM Message, dismissed the complaint as there were "no factual allegations regarding any conduct by, or directed towards, Chaya." M&O at 8. The amended complaint fails to address these deficiencies.

The only new information to be mined from the new factual allegations is that Chaya is the cardholder on two accounts and therefore it may be inferred that she is a consumer within the meaning of the FDCPA. The amended complaint fails to allege, however, that the VM Message was an "initial communication" with her and thus does not state a plausible claim under §1692e(11). In addition, the amended complaint remains silent as to whether Chaya ever actually heard the VM Message, and the question remains unanswered upon review of the parties' motion papers. In response to Defendant's suggestion that Chaya "never heard or received the message," Plaintiffs state that "she is a plaintiff, and her complaint expressly sets forth the text of the communication, so she obviously knows about it," Pls. Opp. at 13, but do not attempt to explain the legal import of this statement.

To circumvent the amended complaint's failure to plead that the VM Message was an initial communication with Chaya, Plaintiffs argue that Robert is Chaya's "agent for the purpose

---

[2] Plaintiffs devote a great deal of their opposition papers to their contention that the VM Message was left after Cavalry made a phony location call that was actually "a pretext for improper collection activity." Pls Opp. at 7. Discussion of this argument is not necessary to resolve the pending motion to dismiss which concerns the sufficiency of the allegations in the amended complaint and the plaintiffs' standing to bring it.

5

of receiving and responding to communications," and that therefore, a communication to him is automatically a communication to her. Pls Opp. at 12. This position is presumably based on the amended complaint's wholly conclusory allegation that Robert "often returned calls on behalf of Chaya Grosz, as her agent." AC ¶21. The existence of an agency relationship is a legal conclusion and thus this allegation is not assumed to be true. Upon review of the amended complaint, the sole factual allegation that may support the existence of an agency relationship between the two plaintiffs is that they are husband and wife. Generally, however, "it is settled law that 'no agency is implied as between husband and wife from the mere fact of marriage.'" *Kaye v. Grossman*, No. 97 CIV. 8679, 1999 WL 33465, at *1 (S.D.N.Y. Jan. 27, 1999) (*quoting In re Francis*, 15 B.R. 998, 1001 (Bankr. E.D.N.Y. 1981)). Absent further factual enhancement, the amended complaint fails to plausibly allege the existence of an agency relationship between Robert and Chaya.

**B. Standing**

Defendant again argues that Robert does not have standing to bring his claims, whether under §1692(e)(11) or under the general provisions of §1692(e). The civil liability section of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person. . ." 15 U.S.C. §1692k(a). Despite this broad language, "the FDCPA does not grant standing to any individual who may happen to come across" a communication from a debt collector. *Schwartz v. Resurgent Capital Servs., LP,* No. 08 CV 2533, 2009 WL 3756600, at *4 (E.D.N.Y. Nov. 9, 2009). When resolving questions of standing, courts in this Circuit are guided by the Second Circuit's decision in *Sibersky v. Goldstein*, 155 F. App'x 10, 11 (2d Cir. 2005) (summary order). *See generally Datiz v. Int'l Recovery Assocs., Inc.*, No. 15CV3549, 2016 WL 4148330, at *7 (E.D.N.Y. Aug. 4,

6

2016) (noting that while *Sibersky* is not precedential, "lower courts have found its reasoning persuasive and endorsed its approach" to determine standing (citing cases)). "Under *Sibersky*, in order to have standing, Plaintiff must: (1) be a consumer; (2) stand in the shoes of the consumer; or (3) allege injurious exposure." *Kinkade v. Estate Info. Servs., LLC*, No. CV 11-4787, 2012 WL 4511397, at *4 (E.D.N.Y. Sept. 28, 2012).

The original complaint's failure to plead factual allegations sufficient to even attempt application of the *Sibersky* factors was the basis for dismissal of the §1692e claims. The amended complaint provides the following facts that may be relevant to a standing analysis: (1) Chaya was the account holder for credit cards issued by the Gap and Lord & Taylor; (2) both accounts were for personal purposes and were used for the benefit of both Chaya and Robert; (3) Robert *may* have been authorized to use the accounts or a signatory; and (4) Robert often returned calls "on behalf of Chaya Grosz, as her agent." AC ¶21. In opposition to the motion, Robert does not argue that he is a consumer, but rather contends that he has standing because "(1) he received the message, which had been left at a number that the telephone company issued to ***him*** and which both he and his wife Chaya regularly used, and (2) returned the call on behalf of his wife, as her agent and in accordance with their common practice." Pls Opp. at 10 (emphases in original). He also claims to have been injuriously exposed to the communication.

    1.  Standing in the Shoes of the Consumer

A plaintiff has standing to bring a claim if he is the actual consumer or stands in the shoes of the consumer. *Sibersky,* 155 F. App'x at 11-12 (noting that "for the offending communication to be 'with respect to' a person other than the debt consumer or someone standing in the consumer's shoes, that person would have to plead some injurious exposure to the communication to have standing to sue"). To stand in the shoes of a consumer, a plaintiff must

7

be asserting claims on behalf of the consumer, defined by the FDPCA as the "natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. §1692a(3), and must have some legal relationship with the consumer that permits him to do so.  Thus, to properly establish standing, Robert must allege that he is asserting the FDCPA claims on behalf of Chaya, the consumer.  To the contrary, however, Robert is clearly attempting to assert his own claim and lacks standing to do so.  *Sibersky*, 155 F. App'x at 12 (finding husband lacked standing to assert his own claim, noting *inter alia* that he "does not stand in the shoes of the consumer," his wife); *see also Andino v. Mercantile Adjustment Bureau, LLC*, No. 14-CV-59, 2016 WL 651930, at *7 (W.D.N.Y. Feb. 18, 2016) ("although plaintiff has asserted power of attorney over the affairs of his mother, he did not bring this action in a representative capacity, and does not otherwise claim to be standing in the shoes of the consumer to whom the debt collection activity was directed for the purposes of this suit").

    2.  Injurious Exposure

In the opposition papers, Robert claims he was "injuriously exposed" to the VM Message because it was left on a telephone number issued to him.  As this Court noted previously, "[m]ere awareness of, or listening to, the communication does not satisfy the injurious exposure option under *Sibersky*."  M&O at 7 (citing *Barasch v. Estate Info. Servs.*, LLC, No. 07-CV-1693, 2009 WL 2900261, at *4 (E.D.N.Y. Sept. 3, 2009) (granting defendant summary judgment on §1692e(11) claim for lack of standing where plaintiff simply read the letter, amounting to "exposure" to the communication, but providing no evidence of "injurious exposure")).  While the Second Circuit has not precisely defined what constitutes "injurious exposure," dismissal is appropriate where a plaintiff "has not alleged that he suffered any actual damages and has not otherwise plead facts that the Court may reasonably construe as injurious exposure."

*Cunningham v. Channer, LLC*, No. 17-CV-1305, 2018 WL 4620391, at *5 (W.D.N.Y. Sept. 26, 2018); *see also Andino,* 2016 WL 651930, at *7 (no evidence of injury by exposure to two voicemail messages left over a ten day time period); *Schwartz,* 2009 WL 3756600, at *4 (plaintiff did not suffer injurious exposure where he "merely" read the communication and experienced no actual damages and alleged no other injury). Robert has not identified any specific injury suffered beyond exposure by listening to the VM Message.

The allegations in the amended complaint regarding damages are similarly unhelpful, consisting of the conclusory statement that plaintiffs "spent time and money dealing with a debt collector that they did not wish to deal with." AC ¶28. The balance of the allegations does not support this statement since the it appears only that Robert listened to the VM Message and returned the call. There are no allegations that he ever spoke to anyone at Cavalry or made or received multiple calls. On these facts, an inference that there was any loss of money or time is implausible. As Robert has failed to allege any facts that plausibly allege that his exposure to the VM Message was injurious, he has not established his standing to bring a claim under §1692e.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, DE [35], is granted. The Clerk of the Court is directed to close the case.

**SO ORDERED**.

                                                          /s/
                                                    Sandra J. Feuerstein
                                                    United States District Judge

Dated: Central Islip, New York
       September 30, 2019